IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

ALEXANDER ALTOTSKY,           )
                                          )
        Plaintiff,           )   TC-MD 120393D
                                            )
      v.                        )
                                          )
MULTNOMAH COUNTY ASSESSOR,   )
                                          )
        Defendant.    )   **DECISION**

Plaintiff appeals the 2011-12 improvement real market value of property identified as

Account R325692 (subject property).[1]  A telephone trial was held on January 10, 2013.  Plaintiff

appeared on his own behalf.  Jeffrey Brown (Brown), Real Property Appraiser, Multnomah

County Department of Assessment, Recording & Taxation, appeared on behalf of Defendant.

Scott Carver (Carver) Registered Appraiser III, Multnomah County Department of Assessment,

Recording & Taxation, testified on behalf of Defendant.

Plaintiff's Exhibits 1–3, 2.17–2.32, 3, 5–25.1, 27–32, 36–45.6, 46.1–46.4, 47, 49.1,

51.13–51.14, 53.1, 54.4, 55.1, 56.2, 57.1–57.2, 60–61.3, 63 and Defendant's Exhibits A though

B were admitted without objection.

## I.  STATEMENT OF FACTS

Carver, a registered appraiser, described the subject property as:

"The subject improvements are a site built single family home of high quality.
The above grade consists of about 5772 square feet of finished living area, with
additional area consisting of about 584 square feet of unfinished living area.  This
results in a total county measured area of 6356 square feet, making this one of the
largest homes in the immediate area.

/ / /

---

[1] Plaintiff did not appeal the subject property's land real market value ($72,760) for the 2011-12 tax year.
(See Ptf's Compl at 2.)

"The construction is custom-built with an elegant entry with spiral stair, arched walls, marble and hardwood floors, gourmet kitchen, butler's pantry, all suite bedrooms, main and upper master bedrooms, atrium with wine bar, and unfinished bonus and mud rooms[.]

"* * * * *

"The subject site is zoned commercial forest use * * *."

(Def's Ex A at 5.)

Plaintiff testified that the subject property's improvement real market value was $417,000 as of the January 1, 2011, assessment date.[2] (*See* Ptf's Am Compl at 1.) Plaintiff testified that he purchased the land and improvements in October 2005, paying $325,000. (*See* Ptf's Ex 8.) He described the property as unique and negatively impacted by government restrictions. Plaintiff testified that after he purchased the property, he intended to remodel the dwelling but ultimately replaced the dwelling completely. Plaintiff testified that he incurred demolition costs even though he testified that he donated the preexisting dwelling to a local fire department which destroyed it during a training exercise. Plaintiff testified that he initially applied for a construction loan for the new dwelling in the amount of $550,000, which was denied. Plaintiff testified that he adjusted his construction budget to match his new loan application amount of $417,000, which was approved in 2009. (*See* Ptf's Exs 12, 37–39.) Construction of the new dwelling was completed in October of 2010. (*See* Ptf's Exs 10, 37–39.) Plaintiff testified that some items, like the deck, front yard, and backyard improvements, were not finished as of the assessment date. He testified that his building permits were approved with "special restrictions to building materials [(including exterior color)], property design and property maintenance [(including plant removal)]." (*See* Ptf's Exs 1 at 3, 2 at 17–32, 11.) Plaintiff testified that

_____

[2] Plaintiff also testified that he is requesting an improvement real market value of "no more than $420,000."

DECISION  TC-MD 120393D                                                                                2

"[d]uring the move to [the] new house, [he] misplaced some of the documents * * * [intended] to demonstrate the cost of construction."

Plaintiff described the housing market in Portland, Oregon, as "declining and very unstable" at the end of 2010 and beginning of 2011. (*See* Ptf's Exs 29–32.) Plaintiff acknowledged that he is not a licensed real estate appraiser or licensed real estate broker. Plaintiff testified that he is a software developer, but he has studied real estate since 1986.

Plaintiff testified that in January 2011, he "heavily" advertised the land and improvements on the "internet and a major newspaper" for $410,000. (*See* Ptf's Exs 14–25 at 1.) In response to Defendant's questions, Plaintiff testified that the Oregonian advertisement was three lines of text and published for approximately two weeks. (*See id.*) Plaintiff testified that he did not retain all of his records regarding the Oregonian advertisement and his internet advertisements. Plaintiff testified that he and his business partner, Jamie Samoiloff (Samoiloff), who owned a 1.5 percent interest in the subject property, accepted an offer to sell the land and improvements for $400,000 in January of 2011. (*See* Ptf's Exs 6, 27.) Plaintiff testified that the buyer terminated the offer in February of 2011. (*See* Ptf's Ex 28.) Plaintiff testified he did not personally know the buyer when the offer was made, but Samoiloff did. Carver questioned Plaintiff about Samoiloff's 1.5 percent interest, asking how much was paid for her interest or if it was a gift. Plaintiff testified that "the interest was a gift for help during construction."

Carver reviewed his appraisal report, testifying that he identified three properties as comparable to the subject property's land and improvements. (*See* Def's Ex A at 6–8, 10.) He testified that he selected "similar properties to the subject" after conducting "a broad search in the northwest Portland area[.]" Carver testified that each sale price was adjusted for time, location, site size, gross living square footage, number of bathrooms, garage and external

amenities. (*See id*. at 6-7, 10.) Carver testified that his time adjustment to the sale prices was based on the chart in his appraisal report that lists assessment years "06-01-09 TO 07-01-10" and "06-01-10 TO 07-01-11" with values of "Percent of Increase or Decrease" between "REO/Short/Distressed" and "Non-Distressed" sales. (*See* Def's Ex A at 7.) Carver's testified that the only time adjustment was to Comp 3 because it sold approximately seven months prior to the assessment date, while Comps 1 and 2 sold relatively close to the assessment date. (Def's Ex A at 6, 10.)

Carver testified that the range of rounded "adjusted sale prices * * * [for land and improvements was] $846,000 to 1,155,900." (*See id*. at 8, 10.) He testified that "comparable [1] is given the most weight as it is closest in proximity to the subject, has similar quality construction, has deferral acreage similar to the subject, sold within days of the assessment/appraisal date and is located in rural NW Portland with well and septic similar to the subject." (*See id*. at 6.) Comp 1 "did have the highest net adjustment at 10.5% of the sale price." (*See id*.) He stated that Comps 2 and 3 were "given equal secondary weight * * *." (*See id*.) In response to Plaintiff's question, Carver stated Comps 2 and 3 have different zoning (Rural Farm Scenic and RF[3]), respectively, than the subject property (commercial farm use zone). Carver's appraisal report states that Comps 2 and 3 are located at least seven miles from the subject property, and Carver adjusted those sale prices by $10,000. Carver testified that he adjusted Comp 3 downward by $126,000 based on the time between its sale date of May 26, 2010, and the assessment date. (*See id*. at 10.) Carver testified that based on his market approach, he determined the subject property's total real market value, including land and improvements, to be $950,000 (rounded). (*See id*. at 8.)

---

[3] Carver did not explain the acronym "RF."

Carver testified that "[t]he cost approach was used as it is most reliable when applied to new construction with no depreciation, improvements with minimal depreciation, and when applicable land/site sales are readily available. For the subject property[,] this is the case." (*See* Def's Ex A at 9.) He testified that he based his cost approach on two sources, the modified 2005 Oregon Department of Revenue Cost Factor book, and Portland area cost data for new construction. (*See* Def's Ex A at 8.) Carver testified that the 2005 Oregon Department of Revenue Cost Factor book is modified to be up to date for costs of materials as of the assessment date, January 1, 2011. He further testified that he used the modified 2005 Oregon Department of Revenue Cost Factor book because "the location of the property in a rural area * * * ha[d] an impact on construction." When asked by Plaintiff how different zoning would affect Defendant's cost approach analysis, Carver testified that all comparables for his cost approach are "treated all the same in so much as they are one buildable site with the excess land factor." Plaintiff noted that Carver did not account for the subject property's government restrictions, demolition costs or incomplete construction as of the assessment date. Carver testified that based on the cost approach, he determined the subject property's "Site Value," or land value, to be $343,200, and an "Improvement Cost" value of $750,400, with a total real market value of $1,093,600 (rounded). (*See* Def's Ex A at 9, 11.)

Carver concluded that the "Sales Comparison Approach was * * * the most relevant and reliable valuation method for the subject property type, therefore, it was given the most weight with the cost approach secondary." (*See* Def's Ex A at 9.) Carver gave a "final reconciliation and conclusion of value(s)," concluding that "[a]s of the Effective Date of 01/01/2011[,] the Opinion of [real market value] is $975,000[.]" (*Id.*)

/ / /

The issue before the court is the subject property's real market improvement value as of January 1, 2011. In Oregon, all real property "not exempt from ad valorem property taxation or subject to special assessment shall be valued at 100 percent of its real market value." ORS 308.232.[4] ORS 308.205(1) defines real market value as:

> "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."

Real market value is determined, in accordance with the statute, by the particular methods and procedures adopted by the Department of Revenue. ORS 308.205(2). There are three approaches to valuation (income, cost, and sales comparison) that must be considered when determining the real market value of a property. *Allen v. Dept. of Rev.*, 17 OTR 248, 252 (2003); *Gangle v. Dept. of Rev.*, 13 OTR 343, 345 (1995); *see also* OAR 150-308.205-(A)(2)(a). All three approaches must be considered, although all three approaches may not be applicable to the valuation of the subject property. OAR 150-308.205-(A)(2)(a). The valuation approach to be used is a question of fact to be determined on the record. *Pacific Power & Light Co. v. Dept. of Rev.*, 286 Or 529, 533, 596 P2d 912 (1979). Neither party considered the income approach because the subject property is Plaintiff's personal residence.

A.    *Plaintiff's analysis*

As the party seeking affirmative relief, Plaintiff bears the burden of proving that the subject property's real market improvements value is incorrect on the tax roll. ORS 305.427. Plaintiff must establish his claim "by a preponderance of the evidence, or the more convincing or

---

[4] All references to the Oregon Revised Statutes (ORS) and Oregon Administrative Rules (OAR) are to 2009.

greater weight of evidence." *Schaefer v. Dept. of Rev.*, TC No 4530, WL 914208 *2 (Jul 12, 2001) (citing *Feves v. Dept. of Rev.*, 4 OTR 302 (1971)). Plaintiff must present the greater weight of evidence to support his requested improvements real market value. This court has stated that "it is not enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the [real market value] of their property." *Poddar v. Dept of Rev.*, 18 OTR 324, 332 (2005) (quoting *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002) (citation omitted)). "Competent evidence includes appraisal reports and sales adjusted for time, location, size, quality, and other distinguishing differences, and testimony from licensed professionals such as appraisers, real estate agents, and licensed brokers." *Danielson v. Multnomah County Assessor*, TC-MD No 110300D at 7 (Mar 13, 2012). Evidence that is inconclusive or unpersuasive is insufficient to sustain the burden of proof. *Reed v. Dept. of Rev.* (*Reed*), 310 Or 260, 265, 798 P2d 235 (1990).

In the case before the court, Plaintiff did not present any of the three approaches to valuation. Plaintiff did not present any competent evidence of the subject property's real market value as of the date of assessment, such as an appraisal report or testimony of an appraiser or other competent expert. Plaintiff relied on his own testimony regarding (1) the condition of the real estate market as of the assessment date, (2) his advertisement of the subject property, (3) the terminated offer to purchase the subject property in February 2011, and (4) construction costs. Plaintiff's evidence in support of his assessment of the real estate market as of the assessment date is not conclusive evidence of the subject property's real market improvement value because Plaintiff is not a licensed appraiser, real estate agent, or broker and he did not relate the evidence to his neighborhood and, more important, the subject property.

/ / /

Plaintiff's evidence of his advertisement is given little weight because Plaintiff only provided evidence of a single three-line text advertisement, published for approximately two weeks. Plaintiff's advertisement offered to sell both land and improvements. Plaintiff's advertisement was limited in content and duration and is not persuasive evidence in support of Plaintiff's requested improvements real market value as of the assessment date.

Plaintiff's evidence regarding the terminated purchase offer for the subject property in February 2011 is not persuasive as to the subject property's improvement real market value because Plaintiff conceded that a partial owner of the subject property and his business partner, Samoiloff, knew the buyer. There is no evidence the purchase offer was an arm's length transaction and the offer was for both land and improvement. A terminated "offer to purchase the subject property is not an actual sale of the subject property[]" and is not persuasive evidence of real market value. *Ernst Properties LLC v. Marion County Assessor*, TC-MD No 100161B at 9 (Nov 30, 2011).

Plaintiff's evidence regarding construction costs included his testimony that he incurred demolition costs and that some items were incomplete as of the assessment date. He did not quantify or provide documentation regarding the demolition costs or what value reduction is warranted for his incomplete items. Further, while testifying regarding his construction loan, Plaintiff referenced an affidavit of the building contractor, Sergey Pevzner (Pevzner), and twelve "Request[s] for Payment" made by Pevzner. (*See* Ptf's Exs 37, 39.) The affidavit of Pevzner and "Request[s] for Payment" could have been persuasive evidence of actual labor and materials costs for the construction of the new dwelling, except that Pevzner did not testify and Plaintiff did not provide documentation to support his total construction costs. Without Pevzner present

/ / /

to testify, there was no opportunity to verify total construction costs that Plaintiff was unable to substantiate.

Plaintiff's evidence in support of his requested real market value reduction is inconclusive. When the "evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *." *Reed*, 310 Or at 265. Unfortunately, Plaintiff failed to carry his burden of proof.

Even though Plaintiff failed to carry his burden of proof and "the burden of going forward with the evidence" has not shifted, the court has jurisdiction to determine the "real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.427; ORS 305.412.

B.     *Defendant's analysis*

After reconciling its adjusted comparable sales approach and cost approach, Defendant requested that the court increase the total real market tax roll value of the subject property to $975,000, as of the January 1, 2011, assessment date. (*See* Def's Ex A at 9.) The court analyzes each of Defendant's approaches individually.

1.  *Sales comparison approach*

"In a case such as this one before the court, the comparable sales approach, [or market approach,] may be used to value improved properties[]." *Chambers Mgmt. Corp. v. Lane County Assessor*, TC-MD 060354D, WL 1068455 at *4 (Apr 3, 2007) (citing Appraisal Institute, *The Appraisal of Real Estate* 335 (12th ed 2001)) (citations omitted). "In utilizing the sales comparison approach[,] only actual market transactions of property comparable to the subject, or adjusted to be comparable, will be used. All transactions utilized in the sales comparison

/ / /

approach must be verified to ensure they reflect arms-length market transactions." OAR 150-308.205-(A)(2)(c).

Carver's appraisal report presented a comparable sales approach. Carver testified that he verified each of the sale transactions of the comparable properties and adjusted their sale prices. (Def's Ex A at 6–8, 10.) Carver gave the most weight to Comp 1, which had the highest net adjustment of his three comparable sales. Two of Carver's comparable sales, Comps 2 and 3, are located seven miles from the subject property, to which Carver made a significant adjustment of $10,000. Those same comparable sales are zoned differently than the subject property. Carver did not explain what adjustments, if any, should be made as a result of different zoning. Additionally, Carver made a substantial $126,000 downward adjustment to Comp 3 to adjust for the sale date approximately seven-month prior to the January 1, 2011, assessment date. (Def's Ex A at 10.) Carver's adjustment to Comp 3 was based on a chart in his appraisal report which showed comparisons of adjustments between unspecified distressed and non-distressed sales. (Def's Ex A at 7-8.) Carver did not submit the data used to create the chart, nor did he clarify how the percentage adjustments between distressed and non-distressed properties equated to a $126,000 downward time trend adjustment to Comp 3. Carver did not specify how much of his final opinion of total real market value, $950,000, was allocated to land and to improvements. Absent an allocation between land and improvements, along with the other concerns stated above, Defendant's evidence in support of its requested increase to real market value of the subject property is inconclusive.

/ / /

/ / /

/ / /

2. *Cost approach*

"The cost approach is particularly useful in estimating the real market value of new construction because cost and market value can be more closely related when properties are new." *Anderson v. Lane County Assessor*, TC-MD 090298 at 6 (Nov 17, 2009). Under the cost approach, Oregon's administrative rule recognizes evidence of "the reproduction [or] replacement * * * technique[.] * * * The value estimate must include all costs required to assemble and construct the unit of property." OAR 150-308-205-(A)(2)(f)).

Unlike its sales comparison approach, Defendant did specify the amount of real market value allocated to land and improvements in the cost approach. Defendant determined the site, or land value, to be $343,200, and the improvement value to be $750,400. (*See* Def's Ex A at 11.) Carver testified he relied on the modified "2005 Oregon Department of Revenue Cost Factor Book and verified with building-cost for Portland Oregon." (*See* Def's Ex A at 8.) Defendant did not submit the relevant portions of the modified 2005 Oregon Department of Revenue Cost Factor Book or building costs for Portland Oregon to support its conclusion. Without this evidence, Defendant's conclusion of value under the cost approach cannot be verified. Plaintiff's criticism that Carver did not account for the subject property's government restrictions, demolition costs[5] or incomplete items (deck, front yard, back yard improvements) in concluding adjusted sale prices for comparable properties was not adequately addressed by Carver. Defendant's cost approach is incomplete and unpersuasive.

/ / /

/ / /

/ / /

---

[5] Plaintiff did not clarify for the court what demolition costs were incurred after the preexisting dwelling was destroyed during the fire department training.

### III. CONCLUSION

After careful review of the evidence and testimony, the court finds that Plaintiff failed to carry his burden of proof and the court has insufficient evidence to determine the improvement real market value of the subject property as of the assessment date. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

Dated this ___ day of April 2013.

JILL A. TANNER
PRESIDING MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This Decision was signed by Presiding Magistrate Jill A. Tanner on April 2, 2013. The court filed and entered this Decision on April 2, 2013.*